UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARYBETH S.[1],

                                Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

_____

1:20-CV-01058-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Marybeth S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and the Commissioner's motion (Dkt. No. 14) is granted.

## BACKGROUND[2]

On November 10, 2016, plaintiff filed for SSI, alleging disability beginning January 1, 2013. (*See* Tr. 246)[3] Plaintiff's disability benefits application was initially denied on

_____

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial.

[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[3] References to "Tr." are to the administrative record in this case.

January 4, 2017. (Tr. 157, 165) On February 6, 2017, plaintiff timely filed a written request for a hearing. (Tr. 175) A hearing was held before Administrative Law Judge David Begley ("the ALJ") on January 8, 2019. (Tr. 52-87) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert William T. Cody ("the VE"). (*Id.*) On April 2, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 22-38) The Appeals Council denied plaintiff's request for review of the ALJ's determination on June 10, 2020, and this action followed. (Tr. 1-6)

Born on May 9, 1978, plaintiff was 40 years old on the alleged onset date. (Tr. 58) Plaintiff has a GED, attended beauty school for two months, and has past, part-time experience as a factory worker. (Tr. 30, 61)

## DISCUSSION

I.      *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is

"equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d). If the claimant satisfies

both requirements of step three, the Commissioner will find that he or she is disabled

without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the

Commissioner's analysis proceeds to steps four and five. Before doing so, the

Commissioner must "assess and make a finding about [the claimant's] residual functional

capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.*

§404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations."

*Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then

applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual

functional capacity assessment . . . with the physical and mental demands of [the

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the

claimant is able to perform his or her past relevant work, the Commissioner will find that

the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot

perform his or her past relevant work or does not have any past relevant work, then at the

fifth step the Commissioner considers whether, based on the claimant's RFC, age,

education, and work experience, the claimant "can make an adjustment to other work."

*Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.*

If, however, the claimant cannot adjust to other work, he or she is disabled within the

meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant.

If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

     III.     *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since October 3, 2016, the date plaintiff protectively filed an application for SSI. (Tr. 25, 27) At step two, the ALJ found that plaintiff has the severe impairments of bipolar disorder, anxiety, depression, PTSD, asthma, and polysubstance dependence. (Tr. 28) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 28-29) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] should avoid concentrated exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas. She can perform simple, routine, repetitive tasks and work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, only occasional decision making required, and only occasional changes in the work setting. The claimant can occasionally interact with coworkers and supervisors but no tandem tasks and no direct interaction with the general public.

(Tr. 30-37) Proceeding to step four, the ALJ found that plaintiff had no past relevant work. (Tr. 37) At step five, after considering plaintiff's age, education, work experience and residual functional capacity, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as packer, cleaner and material handler. (Tr. 37-38) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from October 3, 2016 through the date of the decision. (Tr. 38)

*Plaintiff's Challenges*

Plaintiff argues that the ALJ erred by giving only some weight to the opinion of plaintiff's treating psychiatric nurse practitioner. (*See* Dkt. No. 12 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

On February 13, 2017, Psychiatric Nurse Practitioner Elizabeth Ostrom completed a Medical Source Statement on behalf of plaintiff. (Tr. 478-83) NP Ostrom opined that plaintiff was seriously limited in remembering work-like procedures; maintaining attention for two-hour segments; maintaining attendance and being punctual within customary strict tolerances; sustaining an ordinary routine without special supervision; making simple work-related decisions; performing at a consistent pace without an unreasonable number of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. (Tr. 480) She opined that plaintiff was unable to complete a normal workday or workweek without interruptions from symptoms; that she was seriously limited for skilled or semi-skilled work; and that she would be absent from work more than four days a month. (Tr. 480-82) NP Ostrom further opined that plaintiff was seriously limited in interacting with the general public; maintaining socially appropriate behavior; traveling to unfamiliar places; and using public transportation. (Tr. 481) While the ALJ assigned "some weight" to NP Ostrom's opinion, the ALJ did not find plaintiff to be nearly as limited as did NP Ostrom. Instead, the ALJ concluded that while plaintiff has some mental limitations which affect her ability to work, plaintiff retains the residual functional capacity

to perform a range of unskilled work in a low stress environment with limited interaction with others. (Tr. 36)

After reviewing the ALJ's decision in light of the record as a whole, the Court finds that the ALJ did not err in assigning only some weight to NP Ostrom's opinion. Pursuant to the regulations applicable to plaintiff's case, nurse practitioners are not considered "acceptable medical sources" whose opinions are entitled to controlling weight. *See* 20 C.F.R. §416.927; SSR 06-3p, 2006 SSR LEXIS 5.[4] However, nurse practitioners are included among "other sources," whose "opinions should be considered as to the severity of a claimant's impairment and ability to work." *Id*. Thus, the ALJ is still required to weigh opinion evidence from a nurse practitioner, and, in rendering the disability determination, should explain the weight afforded to the opinion and why. *See* 2006 SSR Lexis 5, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). *See also Pena v. Chater*, 968 F. Supp. 930, 937 (SDNY 1997); *aff'd* 141 F.3d 1152 (2d Cir. 1998) (An ALJ is required to "evaluate every medical opinion he receives, regardless of its source."); *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (WDNY 2015) (An ALJ is "free to decide that the opinions of 'other sources'...are entitled to no weight or little weight," but "those decisions should be explained."). Factors to be considered in determining how much weight to give an "other source" opinion, such as an opinion from a nurse practitioner, include (1) the examining and treating relationship; (2) the frequency of treatment; (3) whether the opinion is well explained; and

---

[4] The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several prior Social Security Rulings, including SSR 06-3p, 2006 SSR LEXIS 5, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a). However, because plaintiff's claim was filed on October 3, 2016, prior to the change which took effect on March 27, 2017, the ALJ's analysis here is subject to the prior Rulings, including the rules for evaluating "other source" opinions from a nurse practitioner.

(4) whether the opinion is supported by evidence in the record. *See* 20 C.F.R. §§404.1527(f)(1) and 404.1527(f)(2).

Here, the ALJ provided good reasons, in accordance with the Commissioner's regulations, for assigning only some weight to NP Ostrom's opinion. The ALJ correctly noted that, at the time the opinion was rendered, NP Ostrom had only treated plaintiff on two occasions. (Tr. 36) Thus, the ALJ permissibly found that NP Ostrom had a limited treatment relationship with plaintiff. *See Feliciano v. Berryhill*, 6:16-CV-06311, 2017 U.S. Dist. LEXIS 131582 (WDNY Aug. 17, 2017) (finding that the ALJ properly applied the regulation's express instructions to consider "the length of the treatment relationship and the frequency of examination and the nature and extent of the treatment relationship" in determining that the opinion of plaintiff's psychiatrist was entitled to "little weight" where the opinion was issued after only two visits); *Swan v. Comm'r of Soc. Sec.*, 6:18-CV-06293, 2019 U.S. Dist. LEXIS 72648 (WDNY April 30, 2019) (ALJ permissibly found that doctor's treating relationship with plaintiff was limited where doctor examined plaintiff only three times over the course of a year and no further treatment had been scheduled).

The ALJ also correctly noted that NP Ostrom's extremely limiting opinion was not supported by her own treatment notes. (Tr. 36) For example, NP Ostrom noted that while plaintiff reported having panic attacks and feeling depressed at times with poor focus and concentration, NP Ostrom found plaintiff's bipolar disorder to be well-controlled and that plaintiff had a fair response to medication and counseling. (Tr. 36, 461, 471, 478) The ALJ also appropriately reasoned that NP Ostrom's opinion was inconsistent with other evidence in the record. For example, in November 2016, Mr. Brant, plaintiff's counselor, found plaintiff to be cooperative, pleasant and euthymic. (Tr. 36, 461) The ALJ also cited

generally normal clinical findings in March, June and July of 2017 and reported improvements in plaintiff's condition in December 2018. (Tr. 36, 461, 471, 478)

Thus, the ALJ correctly gave only some weight to the "other source" opinion because it was unsupported by NP Ostrom's treatment notes, and because the record did not show clinical and diagnostic findings that would establish the level of mental impairment indicated by NP Ostrom. *See Schraut v. Comm'r of Soc. Sec.*, 2:13-cv-27, 2013 U.S. Dist. LEXIS 156877 (Dist. Vt. Nov. 1, 2013) (finding that the ALJ gave good reasons for assigning limited weight to treating nurse's opinion, including that the opinion was inconsistent with the record as a whole and the nurse's own treatment notes, which reflected that plaintiff responded well to medication); *Moore v. Comm'r of Soc. Sec.*, 1:18-CV-00022, 2019 U.S. Dist. LEXIS 21896 (WDNY Feb. 11, 2019) (ALJ's decision to afford the nurse practitioner's opinion little weight was proper and supported by substantial evidence where the opinion was inconsistent with the nurse's own treatment notes as well as the other evidence in the record regarding the level of treatment plaintiff sought and required); 20 C.F.R. §416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Thus, the ALJ's evaluation of NP Ostrom's opinion is not an error requiring remand.

Plaintiff also argues that the RFC is not supported by substantial evidence because the medical evidence was not specific enough to render an RFC, and thus the ALJ erroneously interpreted raw medical data and relied on his own lay judgment in crafting the RFC. (*See* Dkt. No. 12 (Plaintiff's Memo. of Law)) The Court disagrees.

The RFC determination is "the most [a claimant] can do despite [her] limitations," and is based upon a holistic review of all relevant evidence in the case record, including

10

both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). Thus, an ALJ's formulation of the RFC is not derived solely from medical opinion evidence. Instead, an ALJ must consider the record as a whole. In fact, the Commissioner's regulations specifically require an ALJ to assess a claimant's RFC "based on all the relevant evidence in [the claimant's] case record," and further explain that such evidence includes objective medical evidence (*i.e.*, medical signs or laboratory findings), medical opinions, medical history, clinical findings, prescribed treatment, and the claimant's own descriptions of his or her limitations. *See* 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). An ALJ is further entitled to consider all evidence presented and to resolve any conflicts in the record when creating the RFC assessment. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

After reviewing the relevant portions of the record together with the detailed decision rendered here, the Court finds that the ALJ correctly considered all pertinent evidence, including the medical treatment notes, clinical findings, medical opinion evidence, and non-medical evidence, and appropriately determined that plaintiff's mental impairments would not preclude all work. In formulating the RFC, the ALJ acknowledged that plaintiff did suffer some impairments as a result of bipolar disorder, anxiety disorder and depression but that she retained the ability to perform simple, routine, and repetitive tasks in a low stress job environment with only occasional decision-making and limited social interaction with co-workers or supervisors and no direct interaction with the public. As outlined below, there was substantial evidence in the record to support this finding.

The record shows that plaintiff has a prior, remote history of drug abuse, including cocaine, heroin, opiates, and benzodiazepines. (Tr. 472) However, plaintiff testified that

she has been sober for six years and the ALJ referenced treatment notes showing that plaintiff's polysubstance dependence is managed with suboxone and toxicology screens. (Tr. 35, 508) In October 2016, plaintiff began treating at Horizon Health Services for anxiety, depression, and bi-polar disorder. (Tr. 31) It was noted that plaintiff had previously been prescribed Paxil and Ambien to treat these conditions, and that she had a history of "doctor shopping." (Tr. 391-92) During a psychiatric evaluation on November 28, 2016, plaintiff reported that her bipolar disorder was well-controlled but that her anxiety and panic attacks had increased. (Tr. 31, 471) On December 12, 2016, plaintiff reported a decrease in depression and an improved mood. (Tr. 31, 463) On February 20, 2017, plaintiff reported that everything was going well and that her mood was stable, though she was experiencing some increased anxiety when in public and as a result of uncertainty with respect to her housing. (Tr. 31, 664-65) However, plaintiff also reported that she had stopped taking Paxil for four days. (*Id.*) As a result, she restarted the medication. (*Id.*) A medication management session on March 20, 2017 revealed generally normal clinical findings and plaintiff reported doing better but with some continued stress and anxiety. (Tr. 31, 670) Her insight and judgment were fair with appropriate thought processes and a normal cognitive status. (Tr. 668-69) Notes from a therapy session on March 22, 2017 reflected that plaintiff's anxiety was improved and that plaintiff had more energy. (Tr. 31, 678) On April 12, 2017, plaintiff reported an improved mood. (Tr. 32, 682) Plaintiff reported increased anxiety on May 24, 2017 as well as panic attacks partly due to living with her mother, stepfather, husband, and children. (Tr. 32, 750-51) Her medications were increased. (*Id.*) Treatment notes from therapy sessions on June 14, 2017 and July 3, 2017 then showed improvement. (Tr. 32, 694, 705) Plaintiff

12

presented as mildly or moderately euthymic; much calmer than in previous sessions; cooperative; and pleasant. She also demonstrated coherent and logical thought processes as well as goal-oriented thought content. (*Id.*) Plaintiff further reported feeling better since finding her own apartment. (*Id.*) On July 27, 2017, plaintiff voluntarily elected to stop mental health treatment at Horizon Health Services. (Tr. 32, 638) Upon leaving, plaintiff stated she was doing well, was happy, and that her mood had been good. (*Id.*) [5]

Plaintiff began psychiatric care again on December 22, 2017 with Kalaiselvi Rajendran, M.D. (Tr. 32, 775-77) Plaintiff had been off medication for two months. (*Id.*) She was hyperverbal with pressured speech, and complained of anxiety and panic attacks. (*Id.*) She was also found to be pleasant and cooperative with intact memory and average intellectual functioning. (*Id.*) Dr. Rajendran prescribed Paxil, Ambien and Ativan and recommended supportive therapy. (*Id.*) Plaintiff followed up with Dr. Rajendran on May 21, 2018, and reported increased anxiety and difficulty sleeping. (Tr. 33, 972) She reported taking Ativan three times per day, which she agreed to reduce to two at the doctor's request. (*Id.*) On July 10, 2018, Dr. Rajendran noted that plaintiff appeared "down" because she elected to discontinue Paxil. (Tr. 974) Dr. Rajendran prescribed Wellbutrin to replace Paxil. (*Id.*) Plaintiff followed up with Dr. Rajendran on October 1, 2018, where it was noted that she was severely abused by her husband but refused to separate from him. (Tr. 978) Dr. Rajendran recommended domestic violence interventional counseling or a shelter, and noted that plaintiff had anxiety due to these situational stressors. (*Id.*) He also indicated that plaintiff was not a candidate for long-term

---

[5] Based on treatment notes from plaintiff's last appointment at Horizon Health Services, it appears that plaintiff elected to stop treatment there because she was upset that a toxicology report came back positive for opiates and benzodiazepines, and she believed this to be an inaccurate result. (Tr. 638)

use of anti-anxiety medication because she tended to take more medicine than needed. (*Id.*) Dr. Rajendran recommended that plaintiff taper off Klonopin, a type of benzodiazepine which is considered a controlled substance. (*Id.*) He also refused to prescribe more Ambien. (*Id.*) Plaintiff testified that she was discharged from treatment with Dr. Rajendran because of her refusal to go to a domestic violence shelter. (Tr. 35) However, the medical records reflect that the discharge occurred when plaintiff took 80 Klonopin pills in less than two weeks and Dr. Rajendran informed her that he would no longer prescribe her medication.[6] (Tr. 33, 35, 978)

Plaintiff was seen at BestSelf Behavioral Health on October 22, 2018. (Tr. 33, 1050) Upon a mental health examination, plaintiff was found to be cooperative and attentive, neatly groomed and with a fine mood. (*Id.*) She demonstrated normal ability to concentrate, very good memory and good insight and judgment. (*Id.*) During a psychiatric evaluation on November 30, 2018, plaintiff reported that she was only depressed during the first days of her menstrual cycle. (Tr. 33, 1030-35) She was found to have clear, lineal, and logical thought processes with slight anxiety and poor to fair insight and judgment. (*Id.*) On December 21, 2018, plaintiff reported that her sleep had improved and that Lamictal, a medicine prescribed to treat her bi-polar disorder, was effective. (Tr. 33, 1028) She had a neat appearance as well as fair attention and concentration, though, as noted by the ALJ, her thought content appeared to revolve around medications. (*Id.*) Plaintiff

---

[6] Plaintiff visited the Kenmore Mercy Emergency Department ("ED") on November 8, 2018 after stopping treatment with Dr. Rajendran and represented that she needed a refill of medication. (Tr. 924) She was discharged with Lamictal, Klonopin and Wellbutrin. (*Id.*) When she returned on November 16, 2018, the ED refused to refill the Klonopin. (Tr. 32, 932) A separate treatment note from a visit by plaintiff to Kenmore Mercy Hospital on October 30, 2017 indicates that plaintiff's request for Ativan was denied because her primary care doctor advised that she was abusing the ED for benzodiazepines. (Tr. 32)

was again advised to wean off Klonopin. (Tr. 33, 1035) However, she disagreed with the reduced dosage and stated that she would be switching to another provider. (*Id.*)

In formulating the RFC, the ALJ appropriately discussed and relied upon on the above medical evidence. This medical evidence demonstrated that plaintiff's mental health symptoms improved when she consistently took her prescribed medication in an appropriate manner. The ALJ also correctly noted that plaintiff had periods of noncompliance where she discontinued her bi-polar and depression medication on her own, such as Paxil, and that her complaints of increased anxiety or depression often coincided with her failure to take this medication. (Tr. 34-35) The record also showed that plaintiff overused certain controlled substances, such as Klonopin and Ativan, and that she "doctor-shopped." *See e.g.*, *Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (upholding the ALJ's findings, including that "plaintiff's condition deteriorated only after he stopped taking his medication" and that plaintiff responded well to treatment); *Cardoza v. Astrue*, 3:10-CV-1951, 2012 U.S. Dist. LEXIS 135499 (D. Conn. April 13, 2012) (in rejecting plaintiff's testimony as to the severity of her symptoms, the ALJ reasonably relied on, *inter alia*, the lack of objective medical evidence in the record as a whole and plaintiff's failure to take her prescribed medications); *Melinda J.C. v. Comm'r of Soc. Sec.*, 19-CV-01618, 2021 U.S. Dist. LEXIS 36339 (WDNY Feb. 26, 2021) ("Although there were brief periods of decompensation requiring hospitalization, they were induced by medication non-compliance and the ALJ properly considered the entire period at issue when reasonably concluding that plaintiff was not disabled."); *Hussnatter v. Astrue*, CV-o9-3261, 2010 U.S. Dist. LEXIS 86942 (EDNY Aug. 20, 2010) ("in order to be entitled to [disability] benefits…, the complaint is required to follow all prescribed treatment if such

treatment can restore his or her ability to work."). The ALJ also correctly noted that plaintiff's anxiety was frequently exacerbated by situational stressors and that her mood improved when the stressors were removed. For instance, plaintiff reported having panic attacks because of an unhappy living environment and decreased anxiety after she moved.

The ALJ then specifically accounted for plaintiff's symptoms of anxiety and depression by limiting the RFC to simple, routine tasks in a low stress job with no fixed production quotas and only occasional decision making or changes in the work setting. He further accounted for plaintiff's mental health impairments by limiting her to only occasional interaction with supervisors or co-workers, no tandem work, and no direct contact with the general public. In support of this determination, the ALJ relied on treatment notes showing that plaintiff's memory was intact and "very good" on prior examinations; that her intellectual functioning was average; and that she was capable of demonstrating fair insight and judgment. (Tr. 28-29, 776, 668-69, 1050) The ALJ also relied on treatment notes reflecting that plaintiff was routinely described as pleasant and cooperative. (Tr. 29, 429-30, 458, 462, 501, 706, 776, 780, 782, 973, 975, 977). He noted that plaintiff never required inpatient mental health treatment or hospitalization during the relevant period. (Tr. 35) The ALJ's finding that plaintiff could carry out simple work procedures was also bolstered by NP Ostrom's opinion that plaintiff "had the limited, but satisfactory, ability to understand, remember, and carry out short, simple instructions, ask simple questions or request assistance, and be aware of normal hazards and take precautions. (Tr. 480-81) *See Patvia v. Colvin*, 6:14-CV-06379, 2015 U.S. Dist. LEXIS 101771 (WDNY Aug. 4, 2015) (noting that it is "within the province of the ALJ to credit

portions of a treating physician's report while declining to accept other portions of the same report[.]").

The ALJ also appropriately considered non-medical evidence in the record in support of his determination that while plaintiff does suffer from some mental impairments, she remains capable of performing simple and routine tasks in a work environment that involves limited decision-making and only occasional social interaction. *See e.g.,* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *Ewing v. Comm'r of Soc. Sec.,* 17-CV-68S, 2018 U.S. Dist. LEXIS 197905 (WDNY Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms."). Here, plaintiff testified that she feeds and walks her dog; cleans her apartment; does make-up to calm down; shops once a month; manages her own medications and medical appointments; and has attended events at her children's school. (Tr. 28-29, 34-35) In a Function Report completed in November 2016, plaintiff reported that she is able to complete household chores, prepare meals, shop for food and personal items, watch television, read if she is interested in the subject, manage funds and pay bills, use the computer daily, and handle her own medical care. (Tr. 276-84 The record reflects that plaintiff informed medical provides that she shops at the mall and at garage sales; spends time with family; babysits a six-month old and his older sister; and takes her daughter to the pool and for walks in the park. (Tr. 29, 678, 683, 685, 706, 280, 678, 682, 684, 694, 705, 1028). These activities, combined with the medical records discussed

above, support the ALJ's conclusion that plaintiff's mental impairments do not preclude her from all work.

Contrary to plaintiff's argument, the fact that the RFC did not correspond perfectly to any one specific medical opinion in the record is not a basis for remand here. "Although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity…here, the treatment notes were in line with the ALJ's RFC determinations." *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020). *See also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). The Court finds the RFC here to be well-supported, and that the ALJ fully accounted for all of plaintiff's limitations which were bore out by the record. Indeed, this is not situation in which the ALJ failed to refer to the medical opinions in the record or based the RFC on either minimal objective findings or his own lay judgment. Instead, the ALJ's RFC findings were supported by substantial evidence, including treatment notes and records from plaintiff's various treating mental health specialists which showed that plaintiff's condition approved when she took her prescribed medication in an appropriate manner and removed situational stressors. The RFC was also supported by clinical psychiatric examinations and plaintiff's reported activities of daily living.

It is plaintiff's burden to prove that her RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was

supported by substantial evidence in the record. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). Further, it is not enough for plaintiff to point to some evidence in the record that could support her position; rather, she must show that "no reasonable factfinder" could have drawn the same conclusions as the ALJ based upon the evidence. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). While plaintiff may disagree with the ALJ's RFC finding, she has not shown that she was more mentally restricted than assessed by the RFC nor has she demonstrated that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record as to plaintiff's mental impairments.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted. The Clerk of the Court shall take all necessary steps to close the case.

**SO ORDERED.**

Dated:      January 7, 2022
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge